Please proceed, Counsel. Thank you, Your Honor. May it please the Court, Mark Benino appearing on behalf of California Casualty. This case presents two issues of substantive California law, both of which are subject to the de novo review standard before this Court. The first issue is the interpretation according to the terms of the California Casualty policy, the language used therein, and then the second issue is the application of the two government code sections that we have talked about extensively in the briefs, 825 and 825.4. First of all, starting with the policy text and the policy interpretation, because that is really the linchpin, if you will, of this particular case. The California Casualty policy has two parties to it. And I focus on the parties. It's obvious, but it's not, because we're talking about the parties of litigation. But Westport was not a party to the California Casualty policy. The party's intent that we are focusing on for the purposes of the policy interpretation is the intent of the administrators and of California Casualty. Counsel, before you get to that, and I know that's important, but I want to be sure that hopefully we have an understanding between us about the following. As I look at the exclusion that shows up at ER 681, it seems to me that casualties coverage is not in excess of all other insurance, but rather is in excess of the primary underlying insurance of $1 million per occurrence. Do you disagree with that? I disagree with that, Your Honor, for two different reasons. Number one, the California Casualty policy, which the page you're referring to is page three of the policy, the policy is only five pages long. On page one of the policy, it mentions the term excess three different times. And on page three of the policy, immediately following the part that I was going to talk about first and I will go back to, is the language insurance under this policy. And you don't read the policy or language of the policy in isolation. You have to read it in the context of the entire policy. Understood. And so I read it in the context of the word excess. But the key for me is what I want to know, is this a sandwich or is this just a big piece of cheese where there's only one piece? And it looks to me like you've got the first level at a million and then you come in. Do you disagree with that? I disagree with that, Your Honor. I need you to explain why. Sure. And that goes to the other language that I was intending to go to, which is on that same page, immediately above the exclusionary language that I think Your Honor referred to, which is the insurance shall not be pro rata, et cetera, et cetera. Right. Is the explanation of what the piece of cheese, if you will, as opposed to the bologna in the sandwich, really is. I'll go with bologna if you want. I don't want to be bologna, Your Honor. I'd rather be the whole piece of cheese. Okay. Have a little bit of bologna. All right. What it says is there must be underlying primary collectible insurance or self-insurance available with a minimum per occurrence limit of $1 million. In other words, the California casualty policy has no obligation to pay until a per occurrence limit of liability of $1 million has been paid. And as we know from the way this case developed, the argument became, well, per occurrence means per administrator, per student, per year. So you had three administrators, you ended up having three students, and you had a combination of three years. Well, excuse me, one had one year, one had two years, and the other had three. So dealing with this then, the Westport policy, did it not have a $1 million per occurrence feature? It had a $1 million per occurrence feature, but the Westport policy does not modify the terms of the California casualty policy. No, I understand that, but what I'm saying is when we look at these, we have to find out what the, if you will, the predicate is here. It seemed to me that the Westport policy had a $1 million per occurrence feature. It did, I would say. It did that. Of course, they paid more, but it had that. And I gather that your position is you don't owe anything. Their position is after you get to this $1 million feature, then your obligation begins. I know you're going to get to the second part about who's covered, but in terms of the sandwich aspect, bologna, cheese, or whatever it is, how do you distinguish that? It seems to me fairly clear that you've got two different issues here. We do. There are two different issues, but the Westport policies, suppose the Westport policy had just hypothetically a $500,000 limit, and they paid all of their limit. That's wonderful, but the California casualty policy, to which Westport is not a party, is only obligated to pay by the language at page 681 that I was just reading. Once there is a million dollars paid from some other source, in other words, that there could be a $15,000 primary policy doesn't obligate the California casualty policy to pay once a million dollars. Here, again, if I'm correct, they had the $1 million per occurrence. They paid that feature and more. So does that not then serve as the predicate to require, assuming that the parties are correct, that would trigger the obligation of your company to get involved? If they had paid $1 million per occurrence per student per year, which totals out in this peculiar fax to $18 million, yes, it would have, because the California casualty policy language specifically states that until with a minimum per occurrence limit of $1 million. Now, the Westport policy, they will say, well, it had a per occurrence limit of $1 million, but it also had a cap that, in effect, reduced that limit down to about $2 or $3 million over that period of time. That's the way they argued it, and that's why we ended up, according to Judge Orrick, coming in next place. But the fact is that's the Westport policy's language, but it is not the language of the precondition essential to the coverage under the California casualty policy. Under your policy, as you interpret it, not only is it a $1 million per occurrence per year, basically, but they've got to pay all of that before you come in.  Exactly, Your Honor. Until the required $1 million limit of liability afforded the insured by such other insurance or self-insurance is exhausted, that's when the California casualty policy pays. So it's, in other words, the California casualty policy is written over a million-dollar payment. It talks about insurance. It talks about self-insurance. It talks about primary insurance. But the point is the California casualty policy, in these provisions at page 681 that you're focusing in on, and that is the focus of this case, unless that is paid, California casualty has no obligation to pay. What's your best argument that it's not what the potential is, but what's actually paid that triggers your obligation? My best argument, Your Honor, is the law that deals with the question of how you interpret an insurance policy, which is with the mutual intent of the parties to that policy. Here are the administrators and California casualty, as I pointed out. And their mutual intent is, as is set forth, there must be a minimum per occurrence limit of $1 million before the California casualty policy attaches, and that payment must exhaust that limit, which the total payment here, which was a big number, no question about it, that Westport paid to settle this case, didn't exhaust that $1 million per occurrence limit. And I think the mutual intent is also supported by the concept that the California casualty policy premium is as low as it was, $1 per administrator, and I know there's discussion about that. Yes, Mr. Pearsall. I'm not supposed to look at that, right? No, under California law you do, under the Fidelity v. Charter Oak case that we cited and the Herzog case and the International Insurance v. Devonshire, a low policy premium can be evidence that the court is entitled to review in considering what the scope of the coverage is. For example, the Charter Oak case, which is really I think the best case, it's short, it's to the point, involved a situation where there was a policy issued to a motel that was owned by a larger company. There was a loss sustained by the larger company, and they tried to tender it to the insurer that had insured the policy that applied to the motel, which had a very small premium, and the trial court or the court of appeals said the policy issued to the motel, the premium itself, the low premium itself, is evidence of the intent of the parties that they weren't covering this parent corporation, they were only covering this particular piece of property here that was not involved in the underlying case. So it does relate. It is not determinative under all circumstances, I'm not saying that, but it does relate, and in this case you have a peculiarly low premium at $1 per administrator. Well, if you really get into that, though, I used to be outside general counsel for an insurance company. Then you've got to get into underwriting questions. In other words, did the underwriters really assume that there are going to be $7 million a case paid on cases like this when they set the premium? You get into all kinds of things. You can get into those questions, Your Honor. You're absolutely right, and if we get into the underwriter assumption cases or the issues, these policies were issued a long time ago. This whole event took place back in the early 90s, as the court knows, and the difficulty with all of that is in California, and I'm sure even in South Dakota, there has been a substantial increase in the jury verdicts on all manner of cases, especially cases of this particular type. I take your point that it's a mutual intent issue, but, of course, like in all contracts, when there's a dispute, the parties don't agree what their mutual intent, if any, was. So I take your point about the amount of the premium. Aside from that, what's your best evidence that everybody agreed with your construction of this document? Actually, Your Honor, I think perhaps the best evidence, in addition to the policy itself, is the page before the first page of the policy, which is the cover letter that is sent out to the owners. Excuse me. And where is that in the record, please? Sorry, Your Honor. That's excerpt of record page 678, also 215. Same thing. It's a letter. It talks about the fact that this is an excess policy, and it's a letter that sends out telling these people these policies are excess policies. And I get all that. I think that's very clear from the policy. The question is when does the excess kick in, whether we have the sandwich or the cheese? Yes, Your Honor, and that is controlled at page 681 by the other insurance that says it has to be a million dollars paid or there is no obligation. So from our perspective as judges, we should look at 681, and all will be revealed when we do so, right? All will be revealed when you do so, yes, Your Honor. And, Your Honor, I'd like to save a couple minutes for rebuttal because we didn't even get to the 825 or 825.4 point, but I think those arguments are laid out in the briefs, and unless the Court has some specific questions about them that they would like me to address. I'll get to you later, but why don't you save your time, and we'll talk about that later. Thank you, Your Honor. Okay. I'll bet you disagree with him. Only on every point, Your Honor. Okay. May it please the Court, my name is Adam Fleischer, and as you may have seen in the docket, my colleague Mark Sheridan was scheduled to argue here today, but due to a personal emergency, I have parachuted in, and I thank you for your indulgence. Well, we extend our best wishes to your colleague. We hope he's going to be okay. Thank you. Certainly here in spirit. Let me start, Your Honor, with what I may affectionately refer to here as the bologna in the sandwich. Okay. There is an idea that you just heard that was also present in the briefs, that Westport issued one package policy for $6 million, and it was supposed to be seamless, and that we are somehow injecting California casualty into that policy. That is flat out wrong. There's nothing in the record to support that. There's no testimony, no documents. That's argument. It's made up. What Westport issued was a series of primary policies, and then separately there's a series of excess policies. The primary policies have on their front page something that says package policy because they cover auto, property, and general liability. The excess policies have different policy numbers, different premium, different policy periods, different language. So this isn't a question really of trying to inject California casualty into some predetermined, you know, monolith of a policy. This case is about three different coverages. There's a primary policy that everyone agrees goes first. Then there's two excess policies, and the question is, how do you order the excess policies? And as California law will tell you, you look at the policies and you look at the provisions. And the California casualty policy says not just in one place, but in numerous places, that it will pay upon exhaustion of the million-dollar primary policy. And I want to address that just very briefly. There's this idea here that Mr. Bonino said if Westport had paid $1 million per student per year, then California casualty would have been triggered or up next. Westport did pay in that primary policy $1 million per student per year. The policy that should have come up next was California casualty. Westport wrote to them and said our primary policy is about to contribute its limits, we think, as we go forward into settlement. You're up next. Before you get to that, I want to understand whether we're talking about the first year or all of the years combined with the sexual abuse allegations. Your opposing counsel said, if I understood him correctly, that you aggregate all of these claims and you get to like $18 million, if I recall the figure correctly, and that's what you paid, that is 15 or whatever you paid in settlement, and so you never get to them. You obviously look at it more in terms of something like the first year or something of that nature. Help me with this. It's a good question, Your Honor. It's not quite the question is good. Help me out. Here's what's happening. There's three distinct legal issues that come into play, and California casualty has put all three issues in a blender, mixed them together, and then tried to say because of this we don't owe anything ever. In order to deconstruct it, you have to look at each of these three issues. The first issue is how many occurrences are there in a policy period? Elizabeth N. and the progeny around the country says, okay, when you have multiple women who are molested in one period, it's one occurrence per victim. That's based on the case law. That issue, let's put a pin in it and move it aside. One occurrence per victim. No matter how many years it occurred. That's per policy period. And what's the policy period? So for each policy period. Is the policy period a year? Yes, Your Honor. In each policy period, if there are two victims molested, there are two occurrences. Okay. In the next policy period, if there are two more victims or the same ones molested, there are two more occurrences. So your opposing counsel is correct to this extent that we look at the coverage per victim, if you will, per policy period, which is a year. So if you have, say, six years, you would have six years times the number of victims, right? Absolutely, Your Honor. Okay. All right. And if you look at the charts in the district court's order at ER 3132 and the charts in Westport's response brief at pages 18 and 21, you'll see that that's exactly how they were paid. One occurrence per victim per policy period. The next question, which is a separate legal issue, becomes, okay, if that is the number of occurrences, how much money does your policy have available to pay for each occurrence? And that is determined based on the policy language. The Westport policies specifically say, and for example, in the primary policy at pages ER 389 and 411, Westport says we will pay one occurrence limit for each occurrence, no matter how many insureds. So the issue is that you have these three administrators who collectively are the gravamen, each of whom is an insured, and they cause this problem. The most Westport primary will pay is $1 million per victim for that occurrence. No matter how many administrators? No matter how many administrators. And the reason, Your Honor, is not what anybody in this courtroom says. The reason is because that's what the policy says. The California casualty policy is different. It says that it will pay a per occurrence limit per insured, and that's no longer in dispute here on appeal. So if they have three administrators, they are paying $150,000 for each administrator for each occurrence. So the first issue, how many occurrences, is determined by the case law. The second issue, what does each policy pay per occurrence, is dictated by the policy. The third issue is when does the policy inset? Now we know how much it will pay. When does it come into play? And this is where California casualty skips parts of its policy and goes straight to the exclusions and then tries to say the exclusion is a condition precedent and bring out your calculators and we'll show you why we never pay anything. But that's not where the story starts. It should start on the cover page of their policy, which says coverage A, which is what's at issue here, is $150,000 per occurrence over $1 million underlying primary layer. It doesn't say take out your calculators and here's how we'll calculate it. It says they pay over the $1 million primary layer. Under Section 3 of their policy called coverages, it says that California casualty agrees to pay damages in excess of the required underlying primary collectible insurance. It doesn't say per occurrence multiplied out over all these years. It says they will pay once the required $1 million primary is exhausted. Then you get to the third place. And that's on a per annum basis, right? Yes. All of this is on each year you kind of look at the landscape anew. Then you get to these exclusions, which California casualty keeps referring to as a condition precedent, a condition. They have a conditions section of their policy that doesn't mention any of this. So context is important. They're looking at the exclusion part of their policy and trying to make it into this broad-ranging insurance trigger, which it's not. What the exclusion section simply says is that there must be underlying primary insurance pursuant to some California code sections, and there shall be no insurance afforded by California casualty until the required $1 million is exhausted. And what's interesting is if you look at the Westport primary policy at page ER386, that policy says this is a $1 million policy issued pursuant to the following California code sections. And they're the same sections that California casualties policy says, we will accept once another primary policy issued pursuant to these provisions pays its $1 million. So that is exactly what the policy says, and that's how it works. And it's important also to note that prior to these cases being settled, the arguments in these briefs and what you've heard here today appear nowhere in the record. California casualty, kind of an important document, they sent a reservation letter, and it's dated 12-12-12 at ER285. And they wrote to their insurers and said, we will accept once the required primary insurance pays its $1 million, and we will not accept until then. They didn't raise any of these other arguments. This was never at issue. These arguments only came up, this whole thing about the code and public policy. For the first time, five months after all the cases were settled, and Westport could not get California casualty to talk to the table, to answer a letter, to do anything. And then you finally get a letter in October of 2014 with all of these new arguments. Now, what you've outlined is exactly what Judge Orrick did, right? He did a good job, Your Honor. Absolutely. Let me address just a few more points. This policy premium point, Judge Parasol, as you aptly noted, is not determinative of anything. One of the exercises we did in the trial court was to show if you take the Westport policies and manipulate the premium to multiply it out by the thousands of individual insureds at the school, we could get to $0.84 per insured. That's less than $1 insured. We asked their corporate designee, who is charged with their corporate knowledge, if that's how it turns out, would you recognize that the premium is significant here? And she said, no, no, no, the premium doesn't matter. You have to look at the policy wording.  Let me just raise one issue about the code section, because I believe that you're about to get a lot of argument about it, and I would simply point you to this. And this kind of is a nice tie-up to everything we've just discussed. You're referring to Government Code 825.4? I am, Your Honor, and more specifically, the Pacific Indemnity case, which 40 years ago issued a ruling on this section and has never been mentioned or heard from since, until California casualty tries to hide behind it to avoid paying anything on this book of business. And the key to that case, if I can just kind of cut to the chase, is the very last sentence. And here's what that case said. The employee's insurance will not apply where there is neither concession nor contract provision which renders the employee's insurance available for the satisfaction of the public entity's obligation. In other words, the Court looked at the private individual coverage of the doctor in that case and said, there's nothing in here that indicates this policy had any intent to participate along with the public entity's insurance, so I'm not going to make it happen. So you look at this case and say, well, in this case, is there concession or contract that addresses this? And it's there in spades. When you look at the California casualty policy, it's not silent on this issue. It screams out over and over, we will pay second once a primary policy that's issued pursuant to these code sections pays its million dollars. There's no case that says they're not allowed to do that. There's no legislation that says they're not allowed to do that. What they're asking you to do is become the legislature and take this case from 40 years ago and say that somehow it prevents the entirety of their insurance program from ever paying anything. And that's not what the case said, and that's not what any case since has said. In conclusion, Your Honors, in just the last 20 seconds, there are four rulings that we're asking for, and I think it helps delineate this case a little bit more. Obviously, Westport is asking for the underlying decision to be affirmed in its entirety. But here's how it breaks down. A ruling that California casualty pays upon exhaustion of the $1 million primary policy, exactly as its policy says it will. Once it pays, it pays without proration or contribution from any other policies, because its policy specifically says that that's how it will pay. Three, the California casualty now can't come back and challenge or relitigate the reasonable allocation of this settlement to the only three named parties in the case, the three administrators. They are barred from doing that. That's where the statute comes in. 825? No. No? Okay. This is an issue as to whether or not California casualty can go back and say how much of the fault and dollars should be assigned to which defendant. And there were four key defendants in the case, three individuals in the school district. Westport argued that because California casualty was recalcitrant and didn't step up, 100% should be allocated to the three individuals. And when you do the math, you get to 2.7. Judge Orrick, to his credit, listened to California casualty and said, I'm not going to assign 100%. I'm going to assign 25% to each culpable party. So you get 75% to these three out of four. And when you do the math, it works out to 2.6 million. California casualty cannot relitigate, rechallenge those liability issues. And then lastly, Westport would request that the prejudgment interest on the $2.6 million award should be affirmed as calculated and set forth in the district court's order, which is in the record at ER001. Thank you, Your Honors. Thank you. All right. We've got some rebuttal time here. Thank you, Your Honor. First of all, I want to retract the citation I gave you on 216 and 679. That letter does not mention the billion-dollar excess, so I just want to make sure that's clear. The discussion of the excess is the very next page where it mentions excess three or four different times. Secondly, the issue of what California casualty owes and when it owes it talks about payment of a primary $1 million limit or self-insurance. In other words, under the terms of the California casualty policy, it is the amount that is paid, not the source of the payment, that is the condition that precedes the obligation of California casualty to pay. And under the California casualty policy, it is per administrator, according to Judge Oreck, per student per year. And that is the definition of per occurrence, which is what the California casualty policy on the face of the language at page 681 requires. And that is the, and that is, if you calculate that out because of the odd policy years versus administrators versus students, it comes up to $18 million in this case. And that's why California casualty doesn't owe anything. Westport, this case wasn't tried and it didn't go to judgment. Westport decided to settle this case. And they decided to settle this case for their own reasons and that they don't have anything to do necessarily with the policy but probably have to do with the risk of an upside judgment and or other things. Westport was in charge of the defense of this case the entire way. And Westport's payment did satisfy, once you aggregated it all, the entire settlement. And that, therefore, California casualty had no obligation to make any payment under the terms of California casualty's policy between California casualty and administrators. And I'm going to leave the 825 unless the Court has questions about that. The time is up on my college member questions. Well, I have one just procedural question. I should have asked the opposing counsel as well. We're talking about California law here, but my experience has been that insurance companies actually like us to publish an opinion even though we're a federal court. Is that your view as well? I'm going to resist the temptation to say it depends on how it comes out, Your Honor. No, we can't tell you that. Your Honor, it's... These are principles that probably need some elucidation, right? I think that's right, Your Honor. Okay. All right. Any other questions by my colleagues? All right. Well, thank you both, counsel, learned counsel. This is an interesting area of law. Most of us read these things and we need to go to sleep at night. It's a really very helpful thing. Thank you all. All right.
judges: Fisher, M. Smith, Piersol